2001 UT App 224

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph TUNZI, Defendant and Appellant.**

**No. 20000728–CA.**

Court of Appeals of Utah.

July 19, 2001.

Joan C. Watt and John D. O'Connell, Jr., Salt Lake City, for Appellant.

Mark L. Shurtleff and J. Frederic Voros, Jr., Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Joseph Tunzi challenges the district court's jurisdiction to enter a judgment of conviction for aggravated assault, a third degree felony, pursuant to Utah Code Ann. § 76–5–103(1)(b) (1999). We vacate the district court's judgment of conviction and remand to the district court with instructions to transfer the case to juvenile court for entry of an adjudication of guilt for third degree felony aggravated assault.

## BACKGROUND

¶ 2 In the fall of 1998, when Tunzi was seventeen years old, he got into a fight with another young man. The State filed an information in juvenile court charging Tunzi with attempted murder. After a hearing held pursuant to Utah Code Ann. § 78–3a–602 (1996) (Serious Youth Offender Act), the juvenile court bound Tunzi over to district court to be tried as an adult.

¶ 3 Following a two day jury trial, the court instructed the jury on the elements of attempted murder and the lesser included offense of aggravated assault. The aggravated assault instruction included elements of both the second and third degree felony versions of that crime. After deliberating, the jury found Tunzi not guilty of attempted murder and guilty of aggravated assault.[1] However, because the aggravated assault instruction contained elements of both the second and third degree felony versions of aggravated assault, Tunzi moved for a new trial or, in the alternative, entry of a conviction for aggravated assault as a third degree felo-

1. The verdict found Tunzi "guilty of aggravated assault, a lesser included offense of the Informa- tion."

ny. The State conceded that the appropriate remedy for the equivocal instruction and general verdict was conviction for aggravated assault as a third degree felony.

¶ 4 After the State conceded that Tunzi should be convicted for aggravated assault as a third degree felony, Tunzi moved the court to remand his case to the juvenile court. Tunzi argued that the district court would lose jurisdiction if he was found guilty of third degree felony aggravated assault because that offense is not one of the serious youth offender offenses enumerated in section 78–3a–602(1) allowing bind-over. The district court denied Tunzi's motion to remand the case to juvenile court and entered a judgment of conviction for the third degree felony version of aggravated assault. The court then sentenced Tunzi to serve an indeterminate term of zero to five years in the Utah State Prison.[2]

¶ 5 Tunzi appealed his conviction arguing that the district court erred when it refused to remand his case to juvenile court. Tunzi also argued there was insufficient evidence to support his conviction for aggravated assault. After filing his notice of appeal, Tunzi discovered that the videotape and transcript from one day of his trial were missing. Tunzi then moved for summary reversal, and the State conceded that reversal was appropriate. The court of appeals denied Tunzi's motion and remanded the case to the trial court to reconstruct the record pursuant to Rule 11(g) of Utah Rules of Appellate Procedure. Tunzi appealed the court of appeals decision to the Utah Supreme Court. On certiorari, the supreme court reversed the court of appeals and remanded the case to the trial court for a new trial. *See State v. Tunzi*, 2000 UT 38, 998 P.2d 816. The supreme court held that reconstruction of the record was inappropriate because "[t]he burdens and futility associated with reconstructing a record are increased exponentially when the issue on appeal concerns the sufficiency of the evidence supporting a conviction...." *Id.* at ¶ 3. Neither the court of

appeals nor the supreme court addressed the merits of Tunzi's first appeal.

¶ 6 On remand, the State moved to proceed under the original information charging Tunzi with attempted murder.[3] However, pursuant to plea negotiations, the State amended the original information to charge Tunzi with the third degree felony version of aggravated assault. Tunzi pleaded guilty to this charge; however, he did not renew his motion to remand his case to juvenile court. In accordance with the plea agreement, the district court again sentenced Tunzi to zero to five years in the Utah State Prison. However, the court gave Tunzi credit for the twenty-one months he had already served and suspended the remainder of the sentence. Tunzi appeals the district court's judgment of conviction.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Whether the Serious Youth Offender Act required the district court to remand Tunzi's case to the juvenile court involves a question of statutory construction which "we review for correctness and give no deference to the conclusions of the trial court." *Adkins v. Uncle Bart's, Inc.*, 2000 UT 14, ¶ 11, 1 P.3d 528.

## ANALYSIS

■ ¶ 8 Tunzi asserts, pursuant to the Serious Youth Offender Act, the district court lost jurisdiction and was required to remand the case to juvenile court when the jury acquitted him of the attempted murder charge and found him guilty of what was ultimately determined to be third degree felony aggravated assault.

¶ 9 The Serious Youth Offender Act provides the procedure by which a juvenile may be "bound over and held to answer in the district court in the same manner as an adult...." Utah Code Ann. § 78–3a–602(3)(b) (1996). One of the prerequisites for binding a minor over to district court is that the minor be charged with one of the specifically enumerated offenses listed in the Seri-

---

**2.** The court also ordered Tunzi to pay restitution to the victim, attorney fees, and a combined fine and surcharge of $5,000.00.

**3.** We also note that the case proceeded under the original case number.

ous Youth Offender Act. *See id.* § 78–3a–602(1)(a) (listing attempted murder and second degree felony aggravated assault as charges warranting bind-over).[4] However, the Serious Youth Offender Act also provides: "The juvenile court under Section 78–3a–104 and the Division of Youth Corrections regain jurisdiction and any authority previously exercised over the juvenile when there is an acquittal, a finding of not guilty, or dismissal of the charges in the district court."[5] *Id.* § 78–3a–602(10).

¶ 10 As the above language clearly indicates, the Serious Youth Offender Act defines the jurisdictional parameters of both the juvenile court and the district court in those instances when a minor is charged with one of the offenses listed in section 78–3a–602(1)(a). Therefore, the Serious Youth Offender Act provides the district court with subject matter jurisdiction over minors bound over to that court.[6] *See Franklin Covey Client Sales v. Melvin,* 2000 UT App 110, ¶ 24 n. 3, 2 P.3d 451 ("Subject matter jurisdiction is the authority and competency of the court to decide the case...."). Consequently, any jurisdictional defect arising from misapplication of the statute cannot be waived. *See James v. Galetka,* 965 P.2d 567, 570 (Utah Ct.App.1998) (stating subject matter jurisdiction " 'can neither be waived nor conferred by consent of the accused' " (citation omitted)); *In re E.G.T.,* 808 P.2d 138, 139 (Utah Ct.App.1991) (stating, "a [subject matter] jurisdictional defect cannot be waived").

¶ 11 Here, the State argues that Tunzi waived his right to appeal when he pleaded guilty to third degree felony aggravated assault. *See id.* at 140 (stating that "entry of an unconditional guilty plea constituted a waiver of the claimed defects in the juvenile court certification proceedings"). However, as stated above, the Serious Youth Offender Act confers subject matter jurisdiction on the district court. Therefore, Tunzi did not waive his claim of error when he pleaded guilty to the charge of third degree felony aggravated assault. Consequently, we address the merits of Tunzi's appeal.

¶ 12 The State charged Tunzi with attempted murder, and the juvenile court bound Tunzi over to district court pursuant to the Serious Youth Offender Act. Tunzi was then tried in district court where a jury acquitted him of attempted murder. Consequently, Tunzi was acquitted of the original charge that supported the juvenile court's bind-over to district court. Further, Tunzi was found guilty of the lesser included offense of aggravated assault, and due to the ambiguous jury verdict, the court in effect dismissed the charge of second degree felony aggravated assault.[7]

¶ 13 The State argues that the juvenile court did not regain jurisdiction over Tunzi because Tunzi was not acquitted of second degree felony aggravated assault—an offense allowing bind-over under the Serious Youth Offender Act. However, the State ignores the language of the Serious Youth Offender Act which states that the juvenile court regains jurisdiction if "there is an acquittal, a finding of not guilty, or *dismissal of the charges* in the district court." *Id.* § 78–3a–602(10) (emphasis added). Upon the finding of not guilty of attempted murder and the court's decision to grant Tunzi's motion to enter a conviction of third degree felony aggravated assault, the juvenile court re-

---

4. The Serious Youth Offender Act also provides that, under certain circumstances, a minor may be bound over to district court even if the minor has not been charged with one of the enumerated offenses. However, Tunzi was charged with one of the enumerated offenses; therefore, we focus our analysis on the offenses listed in subsection (1)(a). *See id.*

5. Utah Code Ann. § 78–3a–104 (1996) enumerates matters over which the juvenile court has exclusive jurisdiction.

6. We also note that the Serious Youth Offender Act is contained in Part 6 of the Juvenile Court Act of 1996, which is titled Transfer of Jurisdiction. *See* Utah Code Ann. §§ 78–3a–601 to –603 (1996).

7. The State conceded, and the court agreed, that the appropriate treatment of the ambiguous verdict was entry of conviction for aggravated assault as a third degree felony. Therefore, when the court granted Tunzi's motion to impose the third degree felony charge, the court's ruling operated as a de facto dismissal of the second degree aggravated assault charge.

gained jurisdiction over Tunzi because there was "a finding of not guilty [and] dismissal of the charges [enumerated in section 78–3a–602(1) and allowing bind-over to] district court." Utah Code Ann. § 78–3a–602(10) (1996). Accordingly, we conclude that the trial court erred when it denied Tunzi's motion to transfer jurisdiction back to the juvenile court prior to entry of his conviction.

¶ 14 Finally, the State argues that the district court retained jurisdiction over Tunzi because Tunzi was convicted of an offense arising out of the same criminal episode. In support of its argument, the State points to subsection 7 of the Serious Youth Offender Act. See Utah Code Ann. § 78–3a–602(7) (1996). Subsection 7 provides:

> When a defendant is charged with multiple criminal offenses in the same information or indictment and is bound over to answer in the district court for one or more charges under this section, other offenses arising from the same criminal episode and any subsequent misdemeanors or felonies charged against him shall be considered together with those charges, and where the court finds probable cause to believe that those crimes have been committed and that the defendant committed them, the defendant shall also be bound over to the district court to answer for those charges.

Id. (emphasis added). The State reasons that the use of the term "charges" in subsection 10 includes the serious youth offender charge(s) as well as any other charge arising out of the same criminal episode. Id. at § 78–3a–602(10). Consequently, the State concludes that there must be an acquittal, finding of not guilty, or dismissal of all offenses charged for the juvenile court to regain jurisdiction under subsection 10. See id.

¶ 15 While subsection 7 allows the district court to exercise jurisdiction over other offenses arising out of (and after) the violent felony enumerated in section 78–3a–602(1) and allowing bind-over, the plain language of subsection 7 requires that these offenses be charged in the same information. See id. In

addition, subsection 7 requires the juvenile court to "find[ ] probable cause to believe that those crimes have been committed and that the defendant committed them...." Id. at § 78–3a–602 (7).

¶ 16 Here, the State charged Tunzi in the same information with the single offense of attempted murder. The State did not charge Tunzi with "multiple criminal offenses in the same information[,]" and the juvenile court's bind-over did not necessarily include a finding of "probable cause to believe that those crimes have been committed and that the defendant committed them...." Id. at § 78–3a–602(7). Consequently, the third degree felony aggravated assault was not an "other offense" under subsection 7, and the district court did not have jurisdiction to enter a conviction therefor. Id.

¶ 17 Further, even if it is assumed that the information effectively charges lesser included offenses prior to the requested instructions on such offenses, the included offenses at that point can be only those "whose statutory elements are *necessarily included* within the statutory elements of the charged offense." State v. Carruth, 1999 UT 107, ¶ 13, 993 P.2d 869 (emphasis added). The elements of aggravated assault are not necessarily included within the statutory elements of attempted murder. Compare Utah Code Ann. § 76–5–201 (1996) (listing elements of criminal homicide) with id. § 76–5–103 (listing elements of aggravated assault including elements of intentionally causing serious bodily injury to another or using a dangerous weapon or other means of force likely to produce death or serious bodily injury). Therefore, the information charging Tunzi with attempted murder did not include the charge of aggravated assault at the time of the bind-over.

¶ 18 Finally, we find the State's argument unpersuasive because it would be contrary to the purposes of the Juvenile Court Act of 1996 to interpret the term "charges" in subsection 10 to include charges other than those requiring bind-over under the Serious Youth Offender Act.[8] See State v.

---

8. The purpose of the Juvenile Court Act of 1996 is to, among other things, impose appropriate

*Souza,* 846 P.2d 1313, 1317 (Utah Ct.App. 1993) (stating "if there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose" (internal quotations and citations omitted)). Specifically, it would be unjust and contrary to a minor's best interests to require a minor to "answer in district court in the same manner as an adult" when the minor has not been convicted of any of the violent felonies enumerated in the Serious Youth Offender Act.[9] *See In re A.B.,* 936 P.2d 1091, 1098 (Utah Ct.App.1997) (stating Serious Youth Offender Act allows violent juveniles to be held accountable in district court to protect "the public from juveniles who are just as dangerous as adult criminals"). Consequently, we conclude that the Legislature's use of the term "charges" in subsection 10, Utah Code Ann. § 78-3a-602(10) (1996), refers to the serious youth offender charge(s) that require a juvenile court to bind a minor over to district court and does not include "other offenses arising from the same criminal episode." *Id.* § 78-30-602(7).

## CONCLUSION

¶ 19 Tunzi was found not guilty of attempted murder, and the lesser included offense of second degree aggravated assault was, in effect, dismissed. Although the trial court entered a conviction for third degree felony aggravated assault, third degree felony aggravated assault is not an offense over which the district court may retain jurisdiction over

Tunzi. Therefore, the juvenile court regained jurisdiction over Tunzi pursuant to subsection 10 of the Serious Youth Offender Act at the time that Tunzi was acquitted of attempted murder and the court determined that his conviction should be for third degree felony aggravated assault. Accordingly, we vacate Tunzi's conviction and remand to the district court with instructions to transfer the case to the juvenile court for entry of an adjudication of guilt for third degree felony aggravated assault.

¶ 20 I CONCUR: JUDITH M. BILLINGS, Judge.

ORME, Judge (concurring):

¶ 21 I concur in the court's opinion, but must note that I find the statute to be, if not ambiguous, at least perplexing. I believe the main issue presents a much closer question than the lead opinion recognizes.

¶ 22 My puzzlement concerns subsection 10 of the Serious Youth Offender Act, which states:

> The juvenile court under Section 78-3a-104 and the Division of Youth Corrections regain jurisdiction and any authority previously exercised over the juvenile when there is an acquittal, a finding of not guilty, or a dismissal of the charges in the district court.

Utah Code Ann. § 78-3a-602(10) (1999). The subsection is capable of two interpretations, neither of which is very satisfying. One view—that offered by the State—is that subsection 10 merely recognizes that if a

---

sanctions on minors who have violated the law and strive to act in the best interests of the children in all cases. *See* Utah Code Ann. § 78-3a-102(5)(a)(g) (1996).

9. [T]here are critically important differences in the treatment of those juveniles tried as adults compared to those left in the juvenile system. For instance, cases tried in the juvenile court are considered civil rather than criminal proceedings. [*See*] Utah Code Ann. § 78-3a-[117 (Supp. 2000)]. This has significant ramifications for an individual's future criminal record. Moreover, any juvenile committed to a secure facility under the direction of the Division of Youth Corrections must be released at age twenty-one. Utah Code Ann. § 62A-7-108(1). Therefore, because section [78-3a-602] applies only to individuals six-

teen years of age or older, a juvenile in the statutory class who is left in the juvenile system faces a maximum potential sentence of five years or less.

The foregoing scenario is a dramatic contrast to that facing another juvenile in the same statutory class who is charged as an adult.... Aside from acquiring a permanent criminal record, this juvenile faces ... a much greater deprivation of personal liberty than that risked by his or her counterpart who is tried as a juvenile. Moreover, rather than facing detention at a juvenile facility, these offenders are eligible for housing in the state prison or other adult facilities.

*State v. Mohi,* 901 P.2d 991, 998 (Utah 1995).

juvenile defendant is cleared of any and all charges in a proceeding that originated under the Serious Youth Offender Act, the juvenile justice system may go ahead and deal with unrelated matters involving the juvenile. The glaring difficulty with this interpretation is that this would be exactly the result if subsection 10 did not exist. In other words, under this interpretation subsection 10 merely states the obvious and is completely unnecessary. Courts are understandably reluctant to conclude that legislatures would enact into law provisions that do nothing at all.

¶ 23 The other view—the one offered by appellant and embraced in the lead opinion—is that the balance of a proceeding will revert to the juvenile justice system once the core charge—and perhaps any other charge that passes muster under subsection 7—has been resolved, even if the juvenile defendant stands convicted in district court. Thus, a defendant could be properly tried in district court on a Serious Youth Offender Act crime. He could be acquitted of that charge but convicted of a lesser included offense not before the district court pursuant to subsection 7. If he were acquitted of the core charge, the district court in which he was convicted of the lesser offense would, at the same instant, lose jurisdiction, and the case would revert to the juvenile court.

¶ 24 I am not aware of any explicit mechanism by which the juvenile court can take over a district court case that has resulted in a conviction, whether by jury or bench trial or by plea bargain. If the Legislature really meant to require such, I cannot imagine why it would not have provided some time frames, specified which court would entertain motions for new trial,[1] and made explicit the idea that the juvenile court would impose sentence.[2] In short, I have a hard time believing the Legislature had in mind that part of a district court case—indeed, a district court conviction—would revert to the juvenile court for further action without saying a little bit more about how such an aberrational approach to criminal jurisprudence would work in practice.

¶ 25 Basically, then, we must decide whether the Legislature, in adopting subsection 10, meant to say nothing at all and was just wasting space in the Utah Code, or whether it meant to say something but did not say it very clearly or completely. Obviously, neither outcome is ideal. On balance, however, I believe the second option is more defensible, and on that basis I concur in the court's opinion. In doing so, I recognize there is about a fifty percent chance we are wrong. If we are, with the problem having been highlighted by this case, I am confident the Legislature will speedily rectify our mistake.

---

1. As the district court loses jurisdiction with the acquittal or dismissal of the core charge, I guess the juvenile court would necessarily entertain any motion for new trial concerning conviction on a lesser included offense. Such a scenario is problematic. The juvenile court would have to decide whether, for instance, newly discovered evidence would possibly change the outcome in a case it did not try.

2. The sentencing implications are perhaps most troubling. The view we adopt leaves a judge who did not preside over the case imposing sentence.