2005 UT 7

**STATE of Utah, Plaintiff and Appellee,**

v.

**Paul R. GULBRANSEN, Defendant and Appellant.**

No. 20020779.

Supreme Court of Utah.

Jan. 28, 2005.

⬥268(5)

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, N. George Daines, James M. Swink, Logan, for plaintiff.

Peter D. Goodall, Ronald J. Yengich, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 The defendant appeals his conviction on four counts of child sodomy for acts he committed as a minor. He claims that the district court erred when it (1) reinstated his conviction and sentenced him ten months after it had transferred his case back to juvenile court, (2) denied his request for a bill of particulars, (3) admitted into evidence at trial photographs of the victim's anus, and (4) admitted testimony at trial concerning laboratory evidence that the State allegedly lost. We affirm.

## INTRODUCTION

¶ 2 On November 6, 2000, the State charged then-seventeen-year-old Paul Gulbransen with three first degree felony counts of aggravated sexual assault, three first degree felony counts of sodomy on a child, two

third degree felony counts of dealing material harmful to a minor (pornography), one second degree felony count of burglary, and one class A misdemeanor count of theft. Under the Serious Youth Offender Act ("SYOA"), the juvenile court bound over Gulbransen to the district court to be tried as an adult on all charges, except for one of the pornography counts.

¶ 3 The four issues Gulbransen brings on appeal arise from his conviction on the child sodomy charges. The factual background of Gulbransen's four claims will be discussed separately, in conjunction with our analysis of each issue.

## I. DISTRICT COURT JURISDICTION

### A. Background

¶ 4 The first issue we are asked to consider on appeal is whether the district court had authority to reinstate Gulbransen's conviction and sentence him ten months after it had transferred his case to juvenile court. This issue implicates the juvenile court's responsibility under the SYOA to bind over juveniles charged with certain crimes to district court to stand trial as adults.

¶ 5 At the time the State charged Gulbransen, he was seventeen years old and therefore came under the purview of the SYOA provisions in Utah Code section 78–3a–602. Utah Code Ann. § 78–3a–602(1) (2002). That act requires a juvenile court to bind over juveniles, sixteen years old and over, to district court if the prosecution shows that there is probable cause to believe that the juvenile committed at least one of nine enumerated serious youth offenses, including aggravated sexual assault. Id. § 78–3a–602(1)–(3). Furthermore, any lesser charges "arising from the same criminal episode" are bound over to district court along with the serious youth offenses upon a finding of probable cause. Id. § 78–3a–602(7).

¶ 6 On November 13, 2000, the juvenile court found probable cause to believe that Gulbransen had committed the three acts of aggravated sexual assault, thereby qualifying him to be tried as an adult in district court. It also found probable cause to believe Gulbransen had committed most of the non-SYOA offenses charged, including the three sodomy counts. Therefore, pursuant to the SYOA, the juvenile court bound over Gulbransen to district court to be tried as an adult for both the SYOA and non-SYOA offenses.

¶ 7 On Gulbransen's motion, the district court severed the sexual offenses from the nonsexual counts. Gulbransen then negotiated a plea agreement on the nonsexual counts, and the district court set a trial date for the aggravated sexual assault and child sodomy charges.

¶ 8 Before trial, the State filed an amended information in the sexual offenses case, dropping the three aggravated sexual assault charges, the only SYOA offenses, and adding a fourth child sodomy charge. The matter went to trial in May 2001, and Gulbransen was convicted on all four child sodomy counts.

¶ 9 After trial, but before the district court sentenced Gulbransen, the court of appeals issued its opinion in the case of State v. Tunzi, 2001 UT App 224, 31 P.3d 588 (Tunzi I ), overruled by State v. Tunzi, 2002 UT 119, 63 P.3d 70 (Tunzi II ). In that decision, the court of appeals interpreted former section 78–3a–602(10) of the SYOA, which allowed the juvenile court to regain jurisdiction "over the juvenile when there is an acquittal, a finding of not guilty, or dismissal of the charges in the district court," Utah Code Ann. § 78–3a–602(10) (1996) (amended 2002), to mean that once the SYOA charges are eliminated, the juvenile court regains jurisdiction even if there are other, non-SYOA charges "arising from the same criminal episode" properly before the district court. Tunzi I, 2001 UT App 224 at ¶ 13, 31 P.3d 588.

¶ 10 Since Tunzi was only convicted of charges "arising from the same criminal episode" as the SYOA offenses, and not the SYOA offenses themselves, the court of appeals held that former section 78–3a–602(10) required transfer of the non-SYOA offenses back to juvenile court. Id. at ¶ 18. The court of appeals therefore vacated Tunzi's conviction in the district court on non-SYOA charges and remanded to the district court

with instructions to transfer the case to juvenile court for entry of an adjudication of guilt on the non-SYOA charges. *Id.* at ¶ 19.

¶ 11 In light of *Tunzi I*, Gulbransen moved the district court to transfer his case back to juvenile court for sentencing on the district court's verdict, since he was only convicted of non-SYOA offenses. The State responded that, according to *Tunzi I*, the district court lost jurisdiction when the SYOA charges were dropped from the information five days before trial, that the trial was therefore a nullity, and that the matter must be transferred back to the juvenile court for new proceedings. The district court agreed with the State's position and transferred the case back to juvenile court by a November 26, 2001 order, finding that the "jury trial where the defendant was found guilty of all counts charged [was] a nullity."

¶ 12 Shortly after the juvenile court regained jurisdiction over Gulbransen's case, the State filed a motion to certify Gulbransen to stand trial in the district court as an adult under Utah's certification statute.[1] On February 6, 2002, the juvenile court bound over Gulbransen to the district court under that statute.

¶ 13 Three weeks later, on February 27, 2002, the Utah Legislature amended the SYOA to overrule *Tunzi I*. The amendment added a new subsection (10) to Utah Code section 78–3a–602 (the SYOA), which states:

If a minor enters a plea to, or is found guilty of, any of the charges filed or any other offense arising from the same criminal episode, the district court retains jurisdiction over the minor for all purposes, including sentencing.

¶ 14 The amendment also modified the previous subsection (10), now subsection (11) of section 78–3a–602, as follows:

The juvenile court ... and the Division of Youth Corrections regain jurisdiction and any authority previously exercised over the juvenile when there is an acquittal, a finding of not guilty, or dismissal of ~~the~~ all charges in the district court.

In effect, these amendments allow the district court to retain jurisdiction over "other offenses arising from the same criminal episode" as the SYOA offenses, even if there is "an acquittal, a finding of not guilty, or dismissal" of the SYOA charges.

¶ 15 In light of this legislative action, the State moved the district court to set a sentencing date on the jury's guilty verdict from Gulbransen's May 2001 trial. The State argued that the district court's November 26, 2001 order to transfer Gulbransen's case back to juvenile court pursuant to *Tunzi I* was a nullity since the legislative amendment overruling *Tunzi I* applied retroactively to Gulbransen's case. As a consequence, the State argued that the district court never lost jurisdiction over Gulbransen's case and could proceed to sentencing. In the alternative, the State asked the district court to reconsider its transfer order and to rule that, in light of the SYOA amendments, the order was harmless error, and that the court should therefore proceed to sentencing on Gulbransen's conviction.

¶ 16 On August 6, 2002, the district court granted the State's motion to set sentencing. It concluded that the SYOA amendments applied retroactively in Gulbransen's case and set aside its November 26, 2001 order, which had transferred the case to juvenile court. Gulbransen was sentenced in district court the following month.

¶ 17 Four months later, on January 9, 2003, we issued opinions in the cases of *Tunzi II* and *State v. Houskeeper*, 2002 UT 118, 62 P.3d 444, wherein we reversed the court of appeals decision in *Tunzi I* as an incorrect interpretation of former section 78–3a–602(10) of the Utah Code. *Tunzi II*, 2002 UT 119 at ¶ 4, 63 P.3d 70; *Houskeeper*, 2002 UT 118 at ¶ 17, 62 P.3d 444.

¶ 18 Gulbransen now challenges the district court's authority to set aside its Novem-

---

1. The certification statute, Utah Code section 78–3a–603, unlike the SYOA, allows the juvenile court, at its discretion, to bind over juvenile offenders fourteen years old and over who have allegedly committed *any* felonies, if the juvenile court finds that "it would be contrary to the best interest of the minor or of the public for the juvenile court to retain jurisdiction." Utah Code Ann. § 78–3a–603(2) (2003).

ber 26, 2001 transfer order and reinstate his conviction.

### B. Analysis

■ ¶ 19 The legal question of whether the district court retained jurisdiction over Gulbransen, as with all questions of law, is reviewed for correctness. *State v. One 1980 Cadillac*, 2001 UT 26, ¶ 8, 21 P.3d 212.

■ ¶ 20 Gulbransen's jurisdictional challenge focuses primarily on how the district court handled his conviction after *Tunzi I* was handed down from the court of appeals. He argues that the district court's order to transfer his case to juvenile court as a result of the *Tunzi I* decision was a de facto dismissal, and that this case should therefore be remanded for a new trial. The State counters by arguing that *Tunzi I* is invalid given the subsequent SYOA amendments. It then insists that those amendments apply retroactively to Gulbransen's case, allowing the district court to set aside its transfer order and proceed to sentencing on the conviction.

¶ 21 However, we conclude that neither of these arguments is necessary in light of our decisions in *Tunzi II* and *Houskeeper*. Because we reversed *Tunzi I* and expressly overruled the court of appeals' interpretation of the SYOA in those decisions, *Tunzi II*, 2002 UT 119 at ¶ 4, 63 P.3d 70; *Houskeeper*, 2002 UT 118 at ¶ 17, 62 P.3d 444, *Tunzi I*'s practical effect of causing the district court to transfer Gulbransen's case back to juvenile court is also nullified. We hold that the district court never lost jurisdiction and, as a consequence, had authority to sentence Gulbransen sixteen months after his conviction.

## II. GULBRANSEN'S REQUEST FOR A BILL OF PARTICULARS

### A. Background

¶ 22 The second issue we are asked to decide on appeal is whether the district court erred in denying Gulbransen's request for a bill of particulars from the State. Under Utah law, a defendant is permitted to make a written demand that the prosecutor "specify in writing as particularly as is known to him the place, date and time of the commission of the offense charged." Utah Code Ann. § 77–14–1 (2003).

¶ 23 When the State filed its initial information in juvenile court on November 6, 2000, it charged Gulbransen with three counts of aggravated sexual assault, occurring on or about "6/2000," "7/1/00–8/31/00," and "7/24/00–8/31/00," respectively. The State also alleged in the same information that the three child sodomy counts occurred on or about "7/4/00–7/24/00," "7/1/00–8/31/00," and "7/24/00–8/31/00," respectively. However, when the State filed its May 11, 2001 amended information, dropping the three aggravated sexual assault charges and adding a fourth child sodomy charge, it amended the range of dates on which these offenses allegedly occurred. The amended information stated that the four child sodomy offenses occurred "on or about the summer of 2000."

¶ 24 In his request for a bill of particulars, Gulbransen claimed that the allegation that the crimes occurred in the "summer of 2000" was too broad and denied him a "meaningful opportunity to respond to the allegations and to determine his whereabouts at the time of the alleged offenses." He also claimed that the State failed to provide "the best information at its disposal as to when the alleged offenses occurred."

¶ 25 At a hearing four days before trial, the district court denied Gulbransen's request on the ground that the State had already provided him with all the information it had regarding the dates of the alleged offenses. Gulbransen now claims that the district court improperly denied his request for a bill of particulars, arguing that the State was required to define the dates of the alleged offenses more specifically than it had in the amended information.

### B. Analysis

■■ ¶ 26 We review a trial court's denial of a request for a bill of particulars for an abuse of discretion. *State v. Allen*, 839 P.2d 291, 298 (Utah 1992).

■ ¶ 27 The requirement under Utah law that the prosecution "specify in writing as particularly as is known to him the place, date and time" of charged offenses, Utah

Code Ann. § 77–14–1 is "not a device to enable defendants to obtain a preview of the prosecution's evidence," *State v. Robbins,* 709 P.2d 771, 773 (Utah 1985). Rather, it is merely designed to give those charged sufficient notice to prepare a defense. *State v. Wilcox,* 808 P.2d 1028, 1031–32 (Utah 1991) (referring to the right of a criminal defendant under the Utah Constitution to "demand the nature and cause of accusation against him," Utah Const. art. I, § 12). We have defined the particularity requirement as the "best information" the prosecution has, and "whatever information the prosecutor has that may be useful in helping to fix a date, time or place of the alleged offenses." *Robbins,* 709 P.2d at 773.

¶ 28 In this case, the district court concluded that the State had provided Gulbransen the best information it had regarding the alleged dates of the offenses. We agree. The State's best information as to the dates of the offenses came from an October 4, 2000 videotaped interview of the victim. At trial, the State established approximate dates and times of the offenses by playing portions of the videotaped interviews of the victim, including the October 4, 2000 interview, wherein the victim gave his best guesses as to when the offenses occurred. Since Gulbransen had a copy of the October 4, 2000 videotaped interview before filing his request for a bill of particulars, and the interview provided the State's best information as to when the alleged offenses occurred, we hold that the prosecutor met his statutory burden to "specify ... as particularly as is known to him the place, date and time" of the charged offenses.

¶ 29 Nonetheless, Gulbransen claims that once the State learned that he was going to present an alibi defense, it amended its information to cover a broader period of time for the offenses, making it more difficult to prove an alibi. He asserts that he could have presented an effective alibi defense regarding at least some of the counts as alleged in the original information. However, this argument is disingenuous at best, since the record clearly indicates that the State served its second amended information on Gulbran-

sen two months before he notified the State of his intended alibi defense.

¶ 30 Furthermore, in cases involving sexual abuse of children, we have recognized that "children are often not able to identify with a high degree of reliability, and sometimes not at all, when an event in the past took place." *Robbins,* 709 P.2d at 773. We have never allowed this unreliability as to precise date and time, by itself, to be fatal to the prosecution. Otherwise, "[a]n abuser could escape prosecution merely by claiming that the child's inability to remember the exact dates and places of the abuse impaired the abuser's ability to prepare an alibi defense." *Wilcox,* 808 P.2d at 1033.

¶ 31 In addition, we have held that "the mere assertion of an alibi defense does not impose on the prosecution the additional burden of proving the precise date of the act. The burden on the prosecution remains the same, i.e., to establish all elements of the crime beyond a reasonable doubt." *State v. Fulton,* 742 P.2d 1208, 1213 (Utah 1987). In child sodomy cases, the specific date of the act is not an element of the crime. *See* Utah Code Ann. § 76–5–403.1. Given the foregoing, the district court properly denied Gulbransen's request for a bill of particulars.

### III. ADMISSIBILITY OF PHOTOGRAPHS

#### A. *Background*

¶ 32 The third issue we are asked to consider is the admissibility of two of the State's exhibits during Gulbransen's trial. At trial, the State relied on the testimony of Diane Crockett, the forensic nurse who examined the victim, to prove evidence of the sodomy offenses. During her testimony, the State offered to admit two photographs, State's Exhibits 1 and 2, of the injured victim's anus. Nurse Crockett used the photographs to explain the various injuries she observed on the victim, and, at the prosecutor's request, she marked the location of the injuries on both exhibits. Defense counsel objected, arguing that the photographs were "unnecessarily graphic" and that it was not "necessary" for the jury to look at them because they would not be helpful in deciding Gulbransen's inno-

cence or guilt. The district court overruled the objection, stating that, although possibly "distasteful or unpleasant," any prejudicial effect the photographs might have on the jury did not outweigh their probative value.

¶ 33 On appeal, Gulbransen argues that the two photographs are gruesome, and, consequently, they should not have been admitted because the State did not show that they have "unusual probative value." In the alternative, he argues that the "highly prejudicial nature" of the photographs "almost certainly aroused the jury's hostility toward [him]" and outweighed the photographs' probative value, making them inadmissible under rule 403 of the Utah Rules of Evidence.

### B. Analysis

¶ 34 We have articulated our process for reviewing the admissibility of allegedly gruesome photographs as follows:

> First, we determine whether the photograph is relevant. Second, we consider whether the photograph is gruesome. Finally, we apply the appropriate balancing test. If the photograph is gruesome, it should not be admitted unless the State can show that the probative value of the photograph substantially outweighs the risk of unfair prejudice. If the photograph is not gruesome, it should be admitted unless the defendant can show that the risk of unfair prejudice substantially outweighs the probative value of the photograph.

*State v. Bluff,* 2002 UT 66, ¶ 46, 52 P.3d 1210, *cert. denied,* 537 U.S. 1172, 123 S.Ct. 999, 154 L.Ed.2d 914 (2003).

¶ 35 A trial court's determination that photographs are relevant is reviewed for abuse of discretion. *See id.* at ¶ 47. "Whether a photograph is gruesome is a question of law, which we review for correctness." *Id.* The trial court's ultimate ruling under rule 403 of the Utah Rules of Evidence is reviewed for an abuse of discretion. *See id.*

¶ 36 Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. Gulbransen alleges that the photographs at issue fail to meet this requirement for two reasons. First, he maintains that the only thing the photographs show is that the victim was repeatedly sexually abused—a fact he never disputed. He merely claims that it was his younger brother who perpetrated the crimes, and that he was not involved. Therefore, the argument goes, since the existence of the injuries is not disputed, the photographs depicting those injuries have no probative value.

¶ 37 This argument is misguided. We agree with the State's argument that a stipulation of fact by defense counsel does not make evidence less relevant, nor is it a basis for depriving the prosecution the opportunity of profiting from the " 'legitimate moral force' " of its evidence in persuading a jury. *State v. Bishop,* 753 P.2d 439, 475 (Utah 1988) (quoting *United States v. Grassi,* 602 F.2d 1192, 1197 (5th Cir.1979)); *see also State v. Florez,* 777 P.2d 452, 455 (Utah 1989) ("[S]o long as the defendant maintain[s] his [not] guilty plea, the State [has] the right to prove its case up to the hilt in whatever manner it [chooses], subject only to the rules of evidence and standards of fair play." (internal quotations omitted)).

¶ 38 Second, Gulbransen argues that the photographs lack any probative value because the information depicted in the photographs was established by other means, namely, the testimony of Nurse Crockett. While it is true that Nurse Crockett gave extensive and detailed testimony at trial concerning the sodomy victim's injuries, this testimony does not render photographs of the injuries irrelevant or inadmissible. We have held that the "fact that the same evidence could have been provided by purely testimonial means does not necessarily make a photograph inadmissible." *State v. Cobb,* 774 P.2d 1123, 1125 (Utah 1989). Clearly the two photographs were relevant in establishing essential elements of the alleged sodomy offenses in that they depicted to the jury, with the explanatory assistance of Nurse Crockett, multiple instances of abuse.

¶ 39 In considering whether a photograph is gruesome, we look at a variety of

factors, including, but not limited to, whether the photograph is in color or black and white; whether it is an enlargement or close-up shot; when the photo was taken in relation to the crime; and whether other details in the photo, aside from the victim, "may exacerbate the photograph's impact on the viewer." *Bluff,* 2002 UT 66 at ¶ 43, 52 P.3d 1210. In this case, the photographs, while in color, are monochromatic. They are close-ups of the victim's anus, but are only 4 × 6 inches in size. There is no blood, obvious bruising, or patent injury in either photo. As the State correctly notes in its brief, "other than some redness and irritation, none of the injuries testified to are obvious absent the nurse's markings." We consider the State's description of the photographs as "sterile and clinical" to be accurate.

¶ 40 In fact, both this court and the court of appeals have found photographs that are considerably more graphic not to be gruesome. *See, e.g., State v. Calliham,* 2002 UT 87, ¶ 39, 57 P.3d 220 (holding that color photographs of murder victim showing his face, bullet wounds, and a small amount of dark, dried blood, were not gruesome); *Bluff,* 2002 UT 66 at ¶¶ 49–51, 52 P.3d 1210 (holding that color photographs showing "vivid and extensive" bruising of child murder victim were not gruesome); *State v. Vargas,* 2001 UT 5, ¶¶ 50–54, 20 P.3d 271 (holding that autopsy photograph showing fractured skull of murder victim was not gruesome); *State v. Jiron,* 882 P.2d 685, 690 (Utah Ct.App.1994) (holding that photograph of murder victim's anal injuries was not gruesome). In light of these examples, the photographs in question could not be considered gruesome under any standard.

¶ 41 However, even if the photographs are not gruesome, the defendant may still prevent them from being admitted if he can show that their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403. As discussed above, Gulbransen is wrong to completely discount the probative value of the photographs. They are useful in depict-

ing evidence of crucial elements of the State's charged offenses. As for prejudice, Gulbransen merely states that the photographs "almost certainly aroused the jury's hostility toward [him]." However, given the sterile and clinical nature of the photographs, we fail to see how these images, standing alone, possibly could have increased the jury's hostility toward Gulbransen.

¶ 42 In conclusion, we hold that the two photographs of the victim's anus are relevant and not gruesome. While they may be slightly unnecessary or cumulative given Nurse Crockett's detailed testimony, the district court did not abuse its discretion in admitting them at trial.

## IV. TESTIMONY CONCERNING LOST LABORATORY EVIDENCE

### A. Background

¶ 43 The final issue we are asked to consider on appeal is whether the district court properly allowed the State to offer testimony concerning laboratory evidence lost at the State Crime Lab. During Nurse Crockett's initial examination of the victim's anus shortly after one of the alleged offenses occurred, she discovered two pubic hairs on the victim that were not his own. She removed the hairs, sealed them in a bag and gave them to the police officer who was present during the examination. She later obtained pubic hair samples from Gulbransen and his brother because they were both alleged to have committed the offenses. However, since the State Crime Lab lost the hairs that Nurse Crockett originally obtained from the victim, she was unable to make a definitive comparison with the hairs obtained from Gulbransen and his brother.

¶ 44 The day before trial, defense counsel filed a motion in limine to suppress any reference at trial to the two pubic hairs collected by Nurse Crockett, arguing that allowing the testimony absent the evidence would violate Gulbransen's due process rights. The district court denied Gulbransen's motion and allowed the testimony during trial, where Nurse Crockett testified that the two hairs found on the victim, in her

opinion, were similar to those of the defendant and his brother.

¶ 45 On appeal, Gulbransen claims for the first time that the State acted in bad faith in losing the evidence, in violation of his constitutionally guaranteed right to access to evidence. He further claims that the district court's admission of the evidence thereby constitutes reversible error.

### B. Analysis

¶ 46 Under United States Supreme Court jurisprudence, "when the State suppresses or fails to disclose *material exculpatory evidence,* the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *Illinois v. Fisher,* 540 U.S. 544, 547, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (per curiam) (emphasis added). However, the "Due Process Clause 'requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which *might have exonerated* the defendant.'" *Id.* (emphasis added) (quoting *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). "[T]he failure to preserve this 'potentially useful evidence' does not violate due process *'unless a criminal defendant can show bad faith on the part of the police.'*" *Id.* (quoting *Youngblood,* 488 U.S. at 58, 109 S.Ct. 333).

¶ 47 The pubic hairs in this case fall into the category of "potentially useful evidence" that, depending on testing, "might have exonerated" Gulbransen. This triggered his burden to produce evidence showing that the police acted in bad faith in losing the evidence, if he wanted to successfully show that his due process rights were violated. However, Gulbransen made no such allegations. While he did contest that he was deprived of his ability to analyze the evidence himself, he never raised the issue of bad faith in the district court. Nor did either party present evidence as to the intentions of the police officers or the State Crime Lab with regard to the evidence.

¶ 48 We have held that, "[a]s a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. We have further determined that the requirement of raising a claim at trial before bringing it on appeal "applies to every claim, including constitutional questions, unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred." *Id.* In this case, Gulbransen failed to raise his claim before the district court and is thereby barred from making such a claim before us. In addition, since he has made no allegation of "exceptional circumstances" or "plain error," his failure to raise the issue at trial deprives him of any exceptional remedy before this court.

### CONCLUSION

¶ 49 All of the issues that Gulbransen has raised on appeal fail. The first three issues, involving the district court's jurisdiction to sentence Gulbransen on his conviction, the district court's denial of his request for a bill of particulars, and the admissibility of the photographs of the victim's anus, all fail on their merits. The final issue raised on appeal, regarding the loss of evidence at the State Crime Lab, fails because Gulbransen did not properly preserve it for appeal. Gulbransen's conviction is therefore affirmed.

¶ 50 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.