**2015 UT App 202**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
RUBEN CHAVEZ-REYES,
Defendant and Appellant.

Memorandum Decision
No. 20100904-CA
Filed August 13, 2015

Fourth District Court, Fillmore Department
The Honorable Donald J. Eyre Jr.
No. 101700003

Rudy J. Bautista, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES STEPHEN L. ROTH and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1 Defendant Ruben Chavez-Reyes appeals his convictions for obstruction of justice, a second degree felony, *see* Utah Code Ann. § 76-8-306 (LexisNexis 2012); burglary of a non-dwelling, a third degree felony, *see id.* § 76-6-202; and tampering with evidence, a third degree felony, *see id.* § 76-8-510.5 (LexisNexis Supp. 2014).[1] Those charges arose in the aftermath of the tragic

---

1. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

murder of Deputy Josie Greathouse Fox.[2] We affirm Defendant's convictions.

¶2     In the early morning hours of January 5, 2010, Deputy Fox was shot to death when she stopped a Cadillac in Delta, Utah.[3] The Cadillac was owned by Defendant. About four minutes after Deputy Fox's last contact with dispatch, her alleged killer, Defendant's cousin, telephoned Defendant. Over the next hour and a half, Defendant's cousin called him ten times. Eventually, Defendant left his home and drove his Corvette to pick up his cousin, who had wrecked the Cadillac on an icy road in Nephi, some fifty miles from Delta.[4] The two men placed the Cadillac's license plates on Defendant's Corvette and made their way to Salt Lake City, throwing two of the cousin's firearms out the window of the Corvette while en route. The men arrived in Salt Lake City around 5:00 a.m. on January 5.

¶3     Meanwhile, investigators learned that Defendant's cousin, not Defendant, had been driving the Cadillac on the night of Deputy Fox's murder. The investigators tracked the cousin's cell phone to an area west of Salt Lake City. When police officers converged on the area and went house to house in search of

---

2. This court typically does not include the names of crime victims, witnesses, or other innocent parties in its decisions. We make an exception in this case due to the considerable notoriety this criminal episode has attracted. The late deputy's identity is well known, and obscuring her identity in this decision would serve no purpose.

3. "On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Martinez*, 2013 UT App 154, ¶ 2 n.1, 304 P.3d 110 (citation and internal quotation marks omitted).

4. Defendant loaned the Cadillac to his cousin about two months before Deputy Fox's murder.

Defendant's cousin, they mistakenly let Defendant and his cousin leave the area with another family. After parting ways with the family, the men took public transportation to Orem. Once there, Defendant called a taxi company and arranged for the two of them to be driven to Provo and then to Beaver. The next morning, January 6, the two men were found sleeping in a shed in Beaver and were taken into custody.

¶4 Defendant was charged with (1) obstruction of justice, (2) burglary of a non-dwelling, (3) tampering with evidence, (4) burglary of a dwelling, and (5) possession of a firearm by a category II restricted person. After a jury trial, he was convicted of the first three charges and acquitted on the two remaining counts. Defendant appeals his convictions.

I.

¶5 Defendant argues that the trial court erred "in admitting a gruesome photograph of murdered Deputy Fox's body." The photograph depicts Deputy Fox as she was found by a fellow officer, "laying on her back with her head towards her truck." Her wounds are not visible in the picture. The Utah Supreme Court has adopted a three-part test for determining whether an allegedly gruesome photograph is admissible:

> First, [the trial court] determine[s] whether the photograph is relevant. Second, [the court] consider[s] whether the photograph is gruesome. Finally, [it] appl[ies] the appropriate balancing test. If the photograph is gruesome, it should not be admitted unless the State can show that the probative value of the photograph substantially outweighs the risk of unfair prejudice. If the photograph is not gruesome, it should be admitted unless the defendant can show that the risk of

unfair prejudice substantially outweighs the probative value of the photograph.

*State v. Bluff*, 2002 UT 66, ¶ 46, 52 P.3d 1210.

¶6      First, Defendant alleges that the photograph of Deputy Fox is inadmissible because it is irrelevant to the charge of obstruction of justice. "A trial court's determination that photographs are relevant is reviewed for abuse of discretion." *State v. Gulbransen*, 2005 UT 7, ¶ 35, 106 P.3d 734. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Utah R. Evid. 401(a). And the evidence must relate to a fact that "is of consequence in determining the action." *Id.* R. 401(b).

¶7      Defendant was charged with obstruction of justice, and consequently, the State was required to prove that Defendant "provide[d] a person with transportation . . . or other means of avoiding discovery or apprehension" and that he did so "with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." *See* Utah Code Ann. § 76-8-306(1)(f) (LexisNexis 2012). Here, the predicate criminal offense was Deputy Fox's murder. Thus, the State had to prove that Defendant intentionally impeded "the investigation, apprehension, prosecution, conviction, or punishment" of his cousin in connection with Deputy Fox's murder. To that end, the photograph of Deputy Fox was relevant because it tended to make the criminal offense of murder "more . . . probable than it would be without the evidence." *See* Utah R. Evid. 401(a).

¶8      Defendant points out that, at trial, defense counsel, in objecting to the photograph of Deputy Fox, noted that the defense had already stipulated to the fact that Deputy Fox had been murdered. However, we agree with the State that "a

stipulation of fact by defense counsel does not make evidence less relevant, nor is it a basis for depriving the prosecution [of] the opportunity of profiting from the legitimate moral force of its evidence in persuading a jury." *See Gulbransen*, 2005 UT 7, ¶ 37 (citation and internal quotation marks omitted).

¶9    Second, Defendant argues that the photograph, "when viewed under the totality of circumstances, is gruesome." "To determine whether a photograph is gruesome, courts consider a variety of factors[.]" *State v. Stapley*, 2011 UT App 54, ¶ 15, 249 P.3d 572 (articulating the factors courts use to evaluate whether a photograph is gruesome). "A photograph is not gruesome . . . merely because it is unpleasant to view." *Id.*

¶10    Defendant's claim that the photograph is gruesome is unpreserved and he therefore seeks review under the plain error exception to the preservation requirement. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. "Plain error is error that is both harmful and obvious." *State v. Emmett*, 839 P.2d 781, 785 (Utah 1992).

¶11    Defendant has not established plain error. At oral argument, Defendant's appellate counsel conceded that the photograph of Deputy Fox is not gruesome under the traditional factors for determining whether a photograph is gruesome. *See Stapley*, 2011 UT App 54, ¶ 15. Indeed, the photograph was taken from such an angle and distance that Deputy Fox's wounds are not visible. Viewers of crime dramas on television see far more graphic images on a regular basis. Appellate counsel argued that the photograph is nevertheless gruesome because of "the overwhelming amount of publicity surrounding this trial" and "the heightened emotional impact a dead officer has on all of us."

¶12    As the State correctly points out, the publicity surrounding Defendant's trial and the emotional impact that the murder of a

law enforcement officer has on the community are not characteristics of the photograph itself, which is the focus of our inquiry. *See State v. Bluff*, 2002 UT 66, ¶ 43, 52 P.3d 1210 ("The court must consider any characteristics of the photograph that tend to make it more or less inflammatory."). Rather, these are, in the State's words, "issues occasioned by the trial itself." We conclude that while the photograph of Deputy Fox is unsettling, *see State v. Allen*, 839 P.2d 291, 302 (Utah 1992) ("Photographs of victims are always sobering and graphic[.]"), it is not gruesome.

¶13 Third, Defendant argues that "the prejudice caused by the photograph substantially outweighed its probative value." Because the photograph is not gruesome, "the standard rule 403 balancing test applies." *State v. Decorso*, 1999 UT 57, ¶ 53, 993 P.2d 837. Under this well-known test, "the court may exclude relevant evidence only if its probative value is substantially outweighed by the risk of unfair prejudice." *Id. See* Utah R. Evid. 403.

¶14 In this case, it is far from clear that it was necessary for the prosecution to introduce the photograph of Deputy Fox. There was no dispute about Deputy Fox's murder, and the prosecution presented ample other evidence of her murder, including testimony from the sergeant who found Deputy Fox's body and the recorded police radio transmissions from the day she was killed. Yet, because this other evidence was introduced (without objection), the introduction of the photograph posed little risk of unfair prejudice. When the State introduced the photograph of Deputy Fox, the jury had already heard the sergeant's testimony concerning the events of January 5, 2010, and shortly after the photograph was introduced, the jury heard the radio recordings. Thus, the jury was well informed about the circumstances of Deputy Fox's murder and the events from which Defendant's obstruction-of-justice charge arose. Under these circumstances, we cannot say that introduction of the photograph was unfairly

prejudicial. Accordingly, we conclude that the trial court acted within its discretion in admitting the photograph into evidence.[5]

II.

¶15    Defendant next argues that "[t]he prosecutor . . . engaged in repeated instances of misconduct during his closing arguments which undermined the fairness of [the] trial." A prosecutor's remarks constitute misconduct meriting reversal only if they "call to the attention of the jurors matters they would not be justified in considering in determining their verdict." *State v. Tillman*, 750 P.2d 546, 555 (Utah 1987). If the prosecutor's remarks do so, we then determine whether they were prejudicial so as to merit reversal. There has been some debate over the standard by which prejudice should be evaluated in this context. We need not resolve the question here but may simply assume that the State must show that "the remarks were harmless beyond a reasonable doubt." *See State v. Davis*, 2013 UT App 228, ¶¶ 12, 18, 311 P.3d 538 (applying the harmless-beyond-a-reasonable-doubt standard to a prosecutorial misconduct claim where "the choice of prejudice standard [was] not outcome determinative").

¶16    During the prosecutor's rebuttal during closing argument, he made three statements to the effect that Defendant's act of

---

5. During oral argument, Defendant's appellate counsel endeavored to expand the scope of this argument by arguing that the totality of the evidence introduced regarding Deputy Fox's murder, including the sergeant's testimony and the police radio transmissions, was unfairly prejudicial. Because this argument was raised for the first time at oral argument, we decline to consider it. *See Mobile Echocardiography, Inc. v. DAT & K, LLC* (*In re Dissolution of Gregory, Barton & Swapp, PC*), 2011 UT App 170, ¶ 10, 257 P.3d 495.

loaning his Cadillac to his cousin two months *before* Deputy Fox's murder was conduct that supported Defendant's obstruction-of-justice charge. Defense counsel objected to all three statements. The trial court sustained the first two objections and overruled the third. Defendant argues that the jury was not entitled to consider the one statement that survived objection because "[p]roviding the Cadillac [that his cousin] was driving when Deputy Fox was murdered has never been a fact [that] supports [the obstruction-of-justice] charge."

¶17 We agree with Defendant that the prosecutor's remarks were improper and called the jurors' attention to "matters they [were] not . . . justified in considering in determining their verdict." *See Tillman*, 750 P.2d at 555. The connection between Deputy Fox's murder and Defendant's act of lending his Cadillac to his cousin two months before the murder is simply too attenuated to support the obstruction-of-justice charge. Additionally, the statements improperly implied that if Defendant had not loaned the Cadillac to his cousin before the murder, Deputy Fox would not have been murdered— apparently because his cousin would not have been in the Cadillac and Deputy Fox would have had no occasion to pull the Cadillac over. The prosecutor's remarks were clearly improper and should not have been made.

¶18 Nevertheless, we are persuaded that the remarks were harmless beyond a reasonable doubt. *See Davis*, 2013 UT App 228, ¶ 18. During the trial, the jury heard testimony that Defendant loaned the Cadillac to his cousin two months before the murder because his cousin had injured his leg while working at a dairy. Based on this fact, the jury would readily have concluded that Defendant let his cousin borrow the Cadillac for a noncriminal purpose and that he did not have the intent to impede the "investigation, apprehension, prosecution, conviction, or punishment" of his cousin at that time because Deputy Fox's murder was some two months in the future and, at

that point, was neither planned nor contemplated. *See* Utah Code Ann. § 76-8-306 (LexisNexis 2012). The fact that Defendant was acquitted on two counts also tends to suggest that the jury was not improperly influenced by the prosecutor's inappropriate remarks.

¶19 More importantly, Defendant admitted to police that he learned about Deputy Fox's murder when his cousin told him he had "broke a cop." And later that evening, having heard this, Defendant nevertheless made the arrangements with the taxi company for the men to travel from Orem to Beaver. So when Defendant made those arrangements, he was fully aware of his cousin's apparent involvement in Deputy Fox's murder.[6] Consequently, wholly aside from the prosecutor's improper remarks, there was ample evidence from which the jury would readily conclude that Defendant had obstructed justice. *See id.* § 76-8-306(1)(f). We therefore conclude that the prosecutor's misconduct was harmless beyond a reasonable doubt. *See Davis*, 2013 UT App 228, ¶ 18.

III.

¶20 Finally, Defendant, represented by new counsel on appeal, argues that he was denied effective assistance of counsel

---

6. Defendant's cousin was ultimately acquitted of Deputy Fox's murder in a state court trial, but he was convicted of illegal possession of a dangerous weapon. We recently affirmed that conviction. *See State v. Roman*, 2015 UT App 183, ¶ 1. Federal charges have also been filed against Defendant's cousin, Roberto Miramontes Roman, in connection with Deputy Fox's death. *See* Lindsay Whitehurst, *Defense Appealing Double-prosecution Ruling in Utah Deputy's Death*, Salt Lake Tribune (July 30, 2015, 8:21 PM), http://www.sltrib.com/news/2475924-155/defense-appeal ing-double-prosecution-ruling-in-utah.

at sentencing. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To establish his claim of ineffective assistance of counsel, Defendant "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶21 At Defendant's sentencing hearing, defense counsel objected to two portions of the presentence investigation report (PSI), including statements that Defendant recommended that the men throw the cousin's firearms out of the Corvette while driving to Salt Lake City. The trial court agreed with defense counsel that the statements were inappropriate because they were based on statements made by Defendant's cousin. The court concluded that the offending statements should be deleted from the PSI. Defense counsel then told the court that he preferred that a new PSI be prepared, with the offending statements excluded.

¶22 Defendant argues that defense counsel's "failure to . . . request the preparation of a new [PSI], and to object to [Defendant] being sentenced based on the information contained in, and sentencing recommendations of, an inaccurate [PSI] was ineffective." We disagree. First, defense counsel did not perform deficiently at sentencing, because he *did* request the preparation of a new PSI:

> And my preference, Your Honor, is that a new [PSI] be prepared with those statements taken out . . . so that it's clear and, obviously, it's not going to matter with this Court, because this Court is going to sentence having read that, but the important part is if he is sentenced to prison, then the parole board doesn't have those statements before it in making its determination.

More importantly, even though the trial court did not grant defense counsel's request for a new PSI, in response to defense counsel's objections the trial court crossed out the inappropriate portions of the PSI. And in the "Judgment, Sentence and Commitment," the trial court noted defense counsel's objections and stated that it "deleted the [offending] text from the [PSI]." Thus, Defendant has failed to establish either deficient performance or prejudice at sentencing. His ineffective-assistance claim therefore fails. *See Strickland*, 466 U.S. at 687.

IV.

¶23    We conclude that the trial court did not err in admitting the photograph of Deputy Fox. Further, although the prosecutor's statements regarding Defendant's Cadillac were improper and should not have been made, these statements were harmless beyond a reasonable doubt. We also reject Defendant's argument that he received ineffective assistance of counsel at sentencing. We therefore affirm Defendant's convictions.

—————